IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HANOVER AMERICAN INSURANCE COMPANY and HANOVER INSURANCE COMPANY, | ) ) ) ) | CASE NO. |
| Plaintiffs, | ) ) | COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND |
| vs. | ) ) | |
| KIND, LLC, | ) ) ) | |
| Defendant. | | |

COMES NOW Hanover American Insurance Company and Hanover Insurance Company (collectively, "Hanover") and files this Complaint for Declaratory Judgment, showing the Court as follows:

1. Hanover brings this Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201(a), to determine an actual controversy between Hanover and KIND, LLC (hereinafter, "KIND") regarding any duty to defend or indemnify KIND related to an ancillary matter styled as *Erin Flanagan, PR of the Estate of Tessa Lauryn Perez, v. KIND, LLC* and found at case no. 8:20 cv 0273 in the United States District Court for the District of Nebraska.

**PARTIES & OVERVIEW OF ACTION**

2. Plaintiffs Hanover American Insurance Company and Hanover Insurance Company (collectively, "Hanover") are insurance companies domiciled in the State of New Hampshire, with their principal place of business in the State of Massachusetts. Each plaintiff is engaged in the business of insurance and does regular and sustained business in the State of Nebraska.

3. Defendant KIND LLC ("KIND") is a limited liability company formed under the laws of the State of New York, with its principal place of business in New York. At all material

times, KIND and its affiliated companies, including KIND Operations, Inc. (a Delaware corporation), sold products in the State of Nebraska.

4. On or about June 2, 2020, KIND was named in a civil action filed in District Court of Sarpy County, Nebraska, captioned *Erin Flanagan, PR of the Estate of Tessa Lauryn Perez, v. KIND, LLC,* case no. D59CI200000974. The *Flanagan* lawsuit alleged that plaintiff's decedent Tessa Perez was a minor child with a peanut allergy, who died of anaphylactic shock on July 19, 2019, after consuming a KIND Dark Chocolate Almond & Sea Salt bar on or about July 17, 2019. The *Flanagan* lawsuit subsequently was removed to US District Court for the District of Nebraska, where it proceeded as case no. 8:20 cv 0273.

5. On or about August 11, 2020, KIND determined that the KIND bar consumed by Tessa Perez was manufactured by Bridgetown Natural Foods, LLC ("BNF"), under a Manufacturing Agreement with KIND Operations, Inc. At all material times, BNF was a Delaware limited liability company based in Oregon. BNF is the named insured under two policies of liability insurance issued by Hanover for the period August 25, 2018, to August 25, 2019.

6. On or about September 4, 2020, KIND tendered the *Flanagan* lawsuit to BNF for defense and indemnity, on the basis of the terms of a Manufacturing Agreement between BNF and KIND Operations, Inc. KIND contended that it was within the scope of the Manufacturing Agreement's indemnity clause, as an affiliate of KIND Operations, Inc.

7. On or about September 15, 2020, pursuant to a reservation of rights, Hanover agreed to provide a defense for KIND as an additional insured under the Commercial Lines policy (policy no. ZZ4-A713252-03) issued by Hanover American Insurance Company to BNF

(the "Hanover Primary Policy"). A copy of the Hanover Primary Policy is attached as exhibit A.

8. On or about September 15, 2020, Hanover also acknowledged that potential indemnity coverage existed for KIND as an additional insured under the Commercial Follow Form Excess and Umbrella policy (policy no. UH4-A713256-03) issued by Hanover Insurance Company to BNF ("Hanover Excess Policy"). A copy of the Hanover Excess Policy is attached as exhibit B.

9. Beginning in or about August 2022, KIND elected to issue instructions to defense counsel being provided by Hanover, and, without the consent of Hanover, to conduct its own settlement negotiations with funds that were neither authorized by nor consented to by Hanover, inducing the settlement with representations that KIND's own money would be used to fund the settlement, assuming obligations, controlling the actions of defense counsel and depriving Hanover direction of the negotiations, each of which actions materially breached the terms of both the Hanover Primary Policy and the Hanover Excess Policy.

10. This lawsuit seeks judicial determination of Hanover's obligations to KIND in connection with the *Flanagan* lawsuit, under both the Hanover Primary Policy and the Hanover Excess Policy, to include a declaration that, as the result of KIND's failure to cooperate in Hanover's conduct of its defense, KIND's assumption of its own defense, and KIND's offer to make voluntary payments to settle the *Flanagan* lawsuit without obtaining Hanover's consent, there is no coverage for KIND in connection with the *Flanagan* lawsuit.

11. Hanover either has paid or may pay to Flanagan's heirs at law certain sums pursuant to the terms of NEB. REV. STAT. § 25-1222.01. Said payment is a disputed, contested payment and shall not be construed as an admission of liability. Hanover claims the entirety of

said payment as damages and seeks reimbursement of this amount from KIND. In the alternative, Hanover alleges it lacked the opportunity to protect its interests in the litigation and settlement discussions for any amount above the aforementioned prior payment, claims prejudice as to any amount above the prior payment and that it is otherwise entitled to declaratory relief that it has no duty to fund any portion of the settlement payment exceeding the amount it had previously authorized.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in this court under 28 U.S.C. § 1332, based on diversity of citizenship. The amount in controversy includes the voluntary payments offered by KIND to resolve the *Flanagan* lawsuit, which exceeds the sum specified in 28 U.S.C. § 1332, exclusive of interest or costs. This court has jurisdiction over plaintiff's request for declaratory relief under 28 U.S.C. § 2201.

13. Venue is proper under 28 U.S.C. § 1391, as this is the judicial district in which a substantial part of the events or omissions giving rise to contract claims and related declaratory relief occurred.

## HANOVER PRIMARY POLICY

14. To qualify as an additional insured under the Hanover Primary Policy, there must have been a written agreement between the named insured, BNF, and KIND requiring BNF to add KIND to its liability insurance. Coverage as an additional insured was contingent upon, in part, the claims asserted against KIND involving "bodily injury" arising out of BNF's acts or omissions in the preparation of products distributed or sold in the regular course of KIND's business.

15. The Insuring Agreement of Coverage A under the Hanover Primary Policy provides that Hanover will: (a) pay those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies; and (b) will have the right and duty to defend an insured against any suit seeking such damages. The "right and duty to defend" an insured, including KIND as an additional insured, includes not only paying defense counsel, but also the right and duty to control and direct the defense.

16. The Insuring Agreement of Coverage A under the Hanover Primary Policy provides that Hanover may, at its discretion, investigate any occurrence and settle any resulting claim or lawsuit against the insured. As between Hanover and its insured, including KIND as an additional insured, decisions relating to settlement negotiations are vested in Hanover.

17. The Conditions of the Hanover Primary Policy provide that an insured, including KIND as an additional insured, must cooperate with Hanover in the investigation or settlement of the claim or defense of the lawsuit.

18. The Conditions of the Hanover Primary Policy provide that an insured, including KIND as an additional insured, shall not, "… except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Hanover American's] consent."

## CNA PARAMOUNT POLICY

19. KIND is the named insured of a CNA Paramount Policy, issued by Continental Casualty Company, policy number 6076344082.

20. The CNA Paramount Policy, issued by Continental Casualty Company, includes, among other coverage parts, General Liability coverage.

21. CNA Paramount Policy, issued by Continental Casualty Company, was in force on July 17, 2019.

22. The Insuring Agreement of the Commercial General Liability Coverage Part provides that Continental Casualty Company "…will pay those sums that [KIND] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies."

## HANOVER EXCESS POLICY

23. The Hanover Excess Policy is excess over any other insurance, whether primary, excess, contingent or on any other basis.

24. The Insuring Agreement of the Hanover Excess Policy includes no defense obligation, but it provides that Hanover has "… the right to participate in the investigation and settlement of any claim, and defense of any 'suit', that we feel may create liability on our part under the terms and conditions of this policy. If we exercise this right, we will do so at our own expense."

25. The Conditions of the Hanover Excess Policy provide that the insured, including KIND as an additional insured, must "… cooperate with the 'underlying insurer' [Hanover American] as required by the terms of their policies and comply with all terms and conditions of those policies" and "… cooperate with [Hanover] in the investigation, settlement or defense of the claim or 'suit.'"

26. The Insuring Agreement of the Hanover Excess Policy further provides that Hanover has "no obligation under this insurance with respect to any claim or 'suit' settled without our consent."

27. The Conditions of the Hanover Excess Policy provide that the insured, including KIND as an additional insured, "must … Not voluntarily make a payment, assume any obligation or incur any expense without our consent, except at that insured's own cost."

## COUNT I

### DECLARATORY JUDGMENT – NO DUTY TO CONTINUE DEFENDING THE UNDERLYING *FLANAGAN* LAWSUIT

28. Hanover restates and re-alleges the allegations in paragraphs 1-27.

29. On or about May 23, 2022, Hanover participated on KIND's behalf in mediation in the *Flanagan* lawsuit, and was prepared to offer a sum to resolve the claims in accordance with the pre-mediation evaluation of KIND's defense counsel. The mediation was terminated early when the Estate's attorney declared an "impasse" after limited negotiations.

30. On or about August 8, 2022, KIND notified Hanover that it was "under a great deal of internal pressure" from its parent corporation to resolve the *Flanagan* lawsuit quickly. In response, on August 10, 2022, Hanover authorized defense counsel to renew settlement discussions and authorized an additional settlement offer.

31. On or about August 24, 2022, KIND notified Hanover that it was displeased by the amount of settlement authority Hanover had extended to defense counsel. KIND insisted that Hanover authorize no further settlement offers without first obtaining KIND's written authorization, a requirement found nowhere in either Policy. Despite KIND's concerns, the offer resulted in a reduction of about 55% in the plaintiff's demand.

32. On or about September 13, 2022, Hanover doubled the settlement authority extended to KIND's defense counsel. On September 14, 2022, KIND initially indicated in writing that it was "on board with" the offer authorized by Hanover; about an hour later, KIND

notified Hanover and defense counsel that it unilaterally decided to "hold … any additional offers to plaintiffs until you hear back from [KIND]."

33. By letters dated September 15, 2022, and September 20, 2022, and email correspondence dated September 27, 2022, Hanover notified KIND that its repeated interventions into the control and direction of the defense, including its unilateral instructions to defense counsel regarding settlement negotiations, were unauthorized by the Policies and constituted serial breaches of the Insuring Agreement and Conditions, specifically the "duty to cooperate" clauses and the "voluntary payments" clauses. Hanover specifically advised KIND that violations by KIND of contract terms could jeopardize its coverage.

34. Despite being warned about the impacts of its unauthorized behavior on the coverage afforded by the Policies, KIND persisted in directing defense counsel to make settlement offers, including voluntary payments in excess of the authority granted by Hanover, without seeking or obtaining authority or consent from Hanover.

35. On September 20, 2022, September 27, 2022, and October 4, 2022, defense counsel confirmed in writing to Hanover that he was instructed by KIND to extend settlement offers not authorized by Hanover, to include KIND's voluntary contribution of its own money to fund the balance of any offer. The last of these settlement communications, between October 4 and October 6, 2022, resulted in resolution of the claims asserted against KIND by the Perez Estate.

36. KIND's breach of the foregoing conditions of forfeiture – including but not limited to the failure to cooperate with Hanover, the unilateral assertion of control over its own defense, and its voluntary offers of settlement funds without first seeking or obtaining Hanover's

consent – were unreasonable and constituted material breaches of the insurance contract, which caused prejudice to Hanover's ability to direct the defense of the *Flanagan* lawsuit and resolve the claims as per the insurer's contractual right to do so.

37. As a result, in accordance with the Insuring Agreement and Conditions of the Hanover Primary Policy, Hanover is entitled to a declaration that it no longer owes KIND any defense obligation in connection with the *Flanagan* Lawsuit, including but not limited to any duty to settle the *Flanagan* lawsuit or fund the settlement.

## COUNT II

### DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY KIND IN THE UNDERLYING *FLANAGAN* LAWSUIT

38. Hanover restates and re-alleges the allegations in paragraphs 1-37.

39. KIND's breach of the foregoing conditions of forfeiture – including but not limited to the failure to cooperate with Hanover, the unilateral assertion of control over its own defense, and its voluntary offers of settlement funds without first seeking or obtaining Hanover's consent – constituted material breaches of the insurance contract, which caused prejudice to the insurer, *inter alia*, by depriving Hanover the ability to direct the negotiation of the *Flanagan* lawsuit, deprived the insurer of control over its own indemnification determinations and created the loss of opportunity to pursue resolution of the lawsuit in the manner and on the terms the insurer, advised by defense counsel as to appraisals of liability and damages, determined to be most advantageous.

40. KIND's breach of the foregoing conditions deprived Hanover of the opportunity to participate and control the settlement process or settlement discussions.

41. KIND's breach of the foregoing conditions deprived Hanover of the opportunity

to protect its interests.

42. Based on the terms, conditions, and limitations of the Policy, the allegations set forth in the underlying *Flanagan* lawsuit, and KIND's material breaches of the conditions of forfeiture, Hanover has no duty under the Hanover Primary Policy or Hanover Excess Policy to indemnify KIND in connection with any of the potential damages that could be awarded in the underlying lawsuit by verdict or settlement. Hanover is entitled to a judicial determination that it has no duty to indemnify KIND in connection with the *Flanagan* lawsuit.

\* \* \* \* \*

WHEREFORE, Hanover prays for judgment declaring that it has no responsibility under the Policy toward KIND in connection with the *Flanagan* lawsuit, specifically:

1. KIND's conduct was unreasonable and constituted multiple material breaches of the Insuring Agreement and Conditions of the Hanover Primary Policy and the Hanover Excess Policy, and caused prejudice to Hanover's ability to direct the defense of the *Flanagan* lawsuit and resolve the claims within the reasonable evaluations by defense counsel;

2. Hanover has no further duty to defend KIND against claims alleged against it in the underlying *Flanagan* lawsuit;

3. Hanover has no duty to pay any settlement on behalf of KIND in the underlying *Flanagan* lawsuit; or in the alternative, that Hanover lacked the opportunity to protect its interests in the litigation and settlement discussions for any amount above the aforementioned prior payment, and was prejudiced as to any amount above the prior payment;

4. Hanover has no duty to indemnify KIND against judgment that might be entered against KIND in the underlying *Flanagan* lawsuit;

5. For Hanover's costs and disbursements incurred herein; and

6. For such other relief as the Court deems just and proper.

## JURY DEMAND

Hanover demands a trial by jury on all issues so triable.

DATED: November 10, 2022

        By: Baylor Evnen, LLP
Union Bank Place
1248 O St., Ste. 600
Lincoln, NE 68508-1499
(402) 475-1075
emotto@baylorevnen.com
cschmidt@baylorevnen.com

        By: */s/ Emily R. Motto*
Emily R. Motto, #24990
Christopher M. Schmidt, #26096
J. Michael Hannon, #26799

4011944