IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

HANOVER AMERICAN INSURANCE
COMPANY, and HANOVER INSURANCE
COMPANY,

        **Plaintiffs/Counter Defendants,**

    **vs.**

**KIND, LLC,**

        **Defendant/Counter Claimant.**

**8:22CV386**

**ORDER**

This matter is before the Court on the Motion to Intervene (Filing No. 18) filed by Bridgetown Natural Foods, LLC ("BNF"). Defendant, KIND, LLC ("KIND"), does not oppose the motion. (Filing No. 35). Plaintiffs, Hanover American Insurance Company and Hanover Insurance Company (collectively, "Hanover"), oppose the motion. (Filing No. 34). The Court stayed briefing on the motion pending a settlement conference, which did not result in a resolution. Thereafter, the Court lifted the stay and BNF filed a reply brief in support of its motion to intervene on April 27, 2023. For the following reasons, the Court will grant BNF's motion.

**BACKGROUND**

Hanover filed this action against KIND on November 10, 2022, seeking a declaratory judgment determining the extent of Hanover's obligations to defend and indemnify KIND in a related lawsuit, *Erin Flanagan, PR of the Estate of T.L.P., v. KIND, LLC,* Case No. 8:20CV273 (July 8, 2020) ("*Flanagan* lawsuit"). (Filing No. 1). The underlying action was filed in state court on June 2, 2020, by the personal representative of a minor child with a peanut allergy who died of anaphylactic shock after consuming a KIND Dark Chocolate Almond & Sea Salt bar. On August 11, 2020, KIND determined the bar consumed by the minor child was manufactured by BNF under a Manufacturing Agreement with KIND Operations, Inc. ("KIND Operations") (Filing No. 1 at pp. 1-2).

BNF was the named insured under two policies of liability insurance issued by Hanover during the relevant time period. On September 4, 2020, KIND tendered the *Flanagan* lawsuit to

BNF for defense and indemnity on the basis of the terms of a Manufacturing Agreement between BNF and KIND Operations.  KIND contended that it was within the scope of the Manufacturing Agreement's indemnity clause as an affiliate of KIND Operations.

On September 15, 2020, pursuant to a reservation of rights, Hanover agreed to provide a defense for KIND in the *Flanagan* lawsuit as an additional insured under the Commercial Lines policy issued by Hanover to BNF ("Hanover Primary Policy"), and acknowledged that potential indemnity coverage existed for KIND as an additional insured under the Commercial Follow Form Excess and Umbrella policy ("Hanover Excess Policy") issued by Hanover to BNF.  However, Hanover alleges that, beginning in August 2022, KIND elected to issue instructions to defense counsel being provided by Hanover, and, without Hanover's consent, to conduct its own settlement negotiations with funds that were neither authorized by nor consented to by Hanover.  Hanover further alleges KIND induced the settlement of the *Flanagan* lawsuit with representations that KIND's own money would be used to fund the settlement.  Hanover alleges KIND's actions in assuming obligations and controlling the actions of defense counsel deprived Hanover direction of the negotiations, each of which materially breached the terms of both the Hanover Primary Policy and the Hanover Excess Policy.  (Filing No. 1 at p. 3).

In the instant lawsuit, Hanover seeks judicial determination of Hanover's obligations to KIND in connection with the *Flanagan* lawsuit under the Hanover Primary Policy and the Hanover Excess Policy.  Hanover seeks a declaratory judgment that, as the result of KIND's failure to cooperate in Hanover's conduct of its defense, KIND's assumption of its own defense, and KIND's offer to make voluntary payments to settle the *Flanagan* lawsuit without obtaining Hanover's consent, there is no coverage for KIND in connection with the *Flanagan* lawsuit.  (Filing No. 1 at p. 3).  KIND filed a counterclaim seeking indemnification from Hanover for the *Flanagan* lawsuit settlement, alleging 1) Hanover breached its obligations as an insurer; 2)  Hanover acted in bad faith by failing to undertake settlement efforts; and 3) KIND was forced to use its own funds to settle in good faith and had a right to indemnification.  (Filing No. 31).

BNF has moved to intervene in Hanover's declaratory judgment action against KIND and KIND's indemnification counterclaim against Hanover.  BNF argues that by filing this lawsuit, Hanover has unreasonably and recklessly exposed BNF, as the named insured under the Hanover insurance policies, to substantial and unwarranted claims for contractual indemnification by KIND relating to the settlement of the *Flanagan* lawsuit and the defense of this action.  BNF asserts that

pursuant to its Manufacturing Agreement with KIND Operations, BNF is required to defend and indemnify KIND against claims arising out of the "preparation, manufacturing, processing, packaging, storing, or handling" of products, packaging or raw materials by BNF.  KIND has advised BNF that it intends to seek indemnification from BNF under the indemnification provision in the Manufacturing Agreement for all payments by KIND to settle the *Flanagan* lawsuit in excess of the amounts (if any) paid by Hanover, as well as the costs incurred by KIND to defend itself against Hanover in this action.  (Filing No. 19 at pp. 2-4).  As such, BNF seeks to intervene in this case as a matter as a matter of right pursuant to Fed. R. Civ. P. 24(a), or at a minimum, permissively under Fed. R. Civ. P. 24(b), and seeks leave to file an Intervenor Complaint against both Hanover and KIND to adequately protect its interests.

## ANALYSIS

BNF asserts it should be permitted to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a).  Under Fed. R. Civ. P. 24(a)(2), the court must permit anyone to intervene who files a "timely motion . . . claim[ing] an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2); see also *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1004 (8th Cir. 2020) (quoting *Nat'l Parks Conservation Ass'n. v. U.S. EPA*, 759 F.3d 969, 975 (8th Cir. 2017)).  A "prospective intervenor must allege facts showing the familiar elements of Article III standing." *Am. C.L. Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011) (citations omitted).  "Constitutional standing requires a showing of: (1) an injury in fact, which is an invasion of legally protected interest that is concrete, particularized, and either actual or imminent; (2) causation; and (3) redressability." *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999); see also *Friends of the Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 886 (8th Cir. 1995).  "The basic inquiry [to determine standing] is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Zanders v. Swanson*, 573 F.3d 591, 593 (8th Cir. 2009) (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979)).

Hanover opposes intervention as a matter of right because it argues that BNF does not have Article III standing, that is, injury in fact, causation, and redressability.  Hanover further argues BNF lacks standing because BNF's proposed claims are not ripe, as BNF has not yet suffered an actual injury that would require BNF to seek recovery.  (Filing No. 34).  In making these arguments, Hanover relies heavily on the standard to bring a claim for a declaratory judgment action, requiring that it be "definite and concrete, touching the legal relations of parties having adverse legal interests, real and substantial, and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 637 (8th Cir. 2021).

After review, the Court finds BNF has demonstrated the requisite standing to intervene in this action.  First, BNF has alleged facts showing a clear injury in fact and the risk of imminent additional injury.  After Hanover filed this lawsuit, KIND advised BNF that regardless of the availability of insurance under the Hanover policies, KIND intends to seek reimbursement directly from BNF under the indemnity provision of the Manufacturing Agreement for any amounts KIND paid to settle and to defend the *Flanagan* lawsuit, as well as for costs incurred by KIND to defend itself against Hanover's claims in this action.  (Filing No. 44 at p. 12).  "[R]isk of imminent, direct financial harm constitutes an injury." *Eckles v. City of Corydon*, 341 F.3d 762, 768 (8th Cir. 2003).

Second, BNF has demonstrated causation. "For causation to exist, 'the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Agred Found. v. U.S Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  BNF asserts that Hanover's conduct "has caused BNF to become the target of a claim for contractual indemnification by KIND for amounts . . . incurred in the defense and settlement of the underlying action that otherwise should have been paid by Hanover." (Filing No. 44). The Court finds this is enough to reach causation, given the imminent financial injury that BNF faces, as KIND is seeking financial recovery from BNF after Hanover failed to reimburse it for costs incurred to settle the *Flanagan* lawsuit.

Finally, there is redressability.  "[T]here must be redressability—a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  In this action, the Court will determine the rights and obligations of Hanover to KIND under the

Hanover Primary Policy and the Hanover Excess Policy—policies under which BNF is the primary insured.  BNF's proposed complaint contains claims against both Hanover and KIND arising out of those same insurance policies.  BNF seeks an order declaring that the contractual indemnity obligation assumed by BNF in its agreement with KIND Operations constitutes an "Insured Contract" under the Hanover Primary and Hanover Excess Policies, and that Hanover must provide coverage to BNF for the contractual indemnification claim asserted by KIND.  BNF further requests an order declaring BNF has no obligation under the Agreement to indemnify KIND for attorneys' fees incurred by KIND in this action.  In other words, a favorable decision for BNF would redress  its imminent economic injury.  As such, the Court concludes BNF has demonstrated the requisite constitutional standing.  See *Lujan*, 504 U.S. at 560-61.

Having found BNF has standing, the Court next turns to the requirements of Rule 24 of the Federal Rule of Civil Procedure to determine whether BNF may intervene as of right in the current action.  Rule 24(a) requires the court to permit a party to intervene "[o]n timely motion" if the proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  "Timeliness is to be determined from all the circumstances." *U.S. v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)); see also *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993) ("Whether a motion to intervene is timely is determined by considering all the circumstances of the case.").  Courts look at different factors to aid in the determination of timeliness, including "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action." *Ritchie*, 620 F.3d at 832 (quoting *Minn. Milk Producers Ass'n. v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998)).

The Court finds BNF's motion to intervene was timely filed.  Hanover filed this action on November 10, 2022.  (Filing No. 1).  KIND received an unopposed extension of time to respond to the complaint until January 27, 2023.  (Filing No. 15).  BNF filed its motion to intervene on January 10, 2023.  (Filing No. 18).  At the time BNF filed its motion, the only pleading that had been filed in this case was Hanover's Complaint, as KIND had not yet filed an answer.  Hanover

has not even filed a responsive pleading to KIND's counterclaim, as the parties requested a stay of this case to participate in a settlement conference; BNF participated in the settlement conference as well.  The parties will not be prejudiced by BNF's intervention because the pleadings have not closed, the Court has not yet entered a case progression order, and thus this case is still in the nascent stages of progression.  Although the Eighth Circuit disfavors intervention late in litigation, that is not the case here.  See *United Food and Com. Workers Union, Local No. 663*, 36 F.4th 777, 780 (8th Cir. 2022).  Under the circumstances, BNF's motion to intervene is timely.

Pursuant to Rule 24(a)(2), BNF must also show it has a cognizable interest in the subject matter of the litigation, that its interest may be impaired as a result of the litigation, and its interest is not adequately protected by the existing parties to the litigation.  See *Medical Liability Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007); Fed. R. Civ. P. 24(a)(2).  BNF clearly has an interest in the subject of the litigation, primarily as it is Hanover's insured under both the insurance policies at issue in this action. (Filing No. 19 at p. 7).  Additionally, BNF was determined to be the manufacturer of the KIND bar at issue in the underlying *Flanagan* lawsuit.  (Filing No. 1).  Finally, BNF is a party to the Manufacturing Agreement with KIND, and it faces KIND's invocation of the agreement's indemnity clause should this case be decided against KIND.  (Filing Nos. 19, 44). The primary interest of BNF in the litigation, therefore, is financial, and that is enough.

The risk of financial harm to BNF, given the statements from KIND, is real, imminent, and potentially significant. Rule 24(a)(2) permits intervention where an injury may not have yet occurred, only requiring that a party's ability to protect the interest in question *may* be impaired if the party is not allowed to intervene, not that it *would be* impaired or *is* impaired. See *Kansas Public Employees Retirement Sys. v. Reimer & Koger Assoc., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (discussing Rule 24(a)(2) and the requirement an intervenor must only show its interest "may" be impaired.); see also *Affiliated Foods Midwest Coop. Inc. v. Supervalu*, 8:16CV465, 2017 WL 473831 at *2 (D. Neb. 2017) ("The third showing a proposed intervenor must make is that the disposition of the case *might* impair its interest.") (emphasis added).  Here, BNF's ability to protect its financial interests and business relationship with KIND may be impaired should it not be able to intervene.  And, given the statements from KIND regarding the indemnification clause, this risk is less hypothetical and more concrete.

BNF's interests also are not adequately protected by the existing parties to the litigation. See Rule 24(a)(2).  The adequacy of representation of the movant's interests by the existing parties is determined by comparing the interests with the intervenor with the interests of the current parties to the action. *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Intervention may be appropriate, then, even if the interests are disparate but they share the same legal goal. *Id.*  An intervenor's burden to prove adequacy of the existing party's representation of the intervenor's interest is minimal. See *Maids on Call v. Ohio Security Ins. Co.*, 2017 WL 4279632; *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774 ("A party generally need only make a minimal showing that representation may be inadequate to be entitled to intervene on that basis."). "Rather than endorse a presumption of adequacy, the Court held that a movant's burden in circumstances like these 'should be treated as minimal.'" *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2204 (2022) (quoting *Trbovich v. Mine Workers*, 404 U.S. 528. 538 (1972)).

BNF's interest in protecting its finances and business relationship with KIND is not held by any other party to the action.  Hanover does not have this interest, but rather has an interest to not reimburse KIND under the insurance agreements.  KIND has an interest in being reimbursed for the costs it undertook to settle the *Flanagan* lawsuit, whether it be from Hanover or KIND. Although the interests of Hanover and BNF are disparate, they have the same legal goal: not paying KIND.  Although the interests of BNF and KIND are disparate, they have the same legal goal: protecting their respective financial interest.  The burden on BNF to show its interests will not adequately be represented is minimal, and BNF has met that low threshold.  It is uniquely situated given the parties of this action and should be allowed the ability to protect itself.  Therefore, the Court finds BNF must be permitted to intervene as of right pursuant to Rule 24(a)(2).

However, even if BNF does not have a right to intervene under Rule 24(a)(2), at a minimum, the Court would permit BNF to intervene under Rule 24(b), which provides that on a timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); see also *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158–59, 1170 n. 9 (8th Cir. 1995). "The decision to grant or deny a motion for permissive intervention is wholly discretionary." *S.D. ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).  "Rule 24 should be liberally construed with all doubts resolved in favor of the proposed intervenor." *Swinton*, 960 F.3d 1004

7

(quoting *Nat'l Parks Conservation Ass'n*, 759 F.3d at 974).  "[D]oubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Seger v. Ernest-Spencer Metals*, No. 9:08CV75, 2008 WL 3875302 at *5 (D. Neb. 2008) (citing *Sierra Club v. Robertson*, 960 F.2d at 86).  The principal consideration in ruling on a 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights.  *South Dakota ex rel Barnett*, 371 F.3d 785.

As discussed above, BNF has Article III standing, its motion was timely filed, and permitting intervention at this stage will not prejudice the adjudication of the current parties' rights. BNF's claims in its proposed Complaint (Filing No. 18-1) clearly arise out of, and are intertwined with the pending claims between Hanover and KIND, and will share overlapping questions of law and/or fact.  Considering that Rule 24 should be liberally construed, the Court finds that, at a minimum, BNF should be permitted to intervene under Rule 24(b).

Accordingly,


**IT IS ORDERED:** Bridgetown Natural Foods' Motion to Intervene (Filing No. 18) is granted.  BNF shall file its Complaint in Intervention (Filing No. 18-1) on or before **May 17, 2023**.


Dated this 2nd day of May, 2023.


BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge