IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HANOVER AMERICAN INSURANCE COMPANY and HANOVER INSURANCE COMPANY, | : : : : | |
| Plaintiffs, | : | CASE NO. 8:22-cv-00386 |
| v. | : : | |
| KIND, LLC, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| BRIDGETOWN NATURAL FOODS, LLC | : : | **INTERVENOR PLAINTIFF BRIDGETOWN NATURAL FOODS, LLC's** |
| Intervenor-Plaintiff | : | **COMPLAINT AND JURY DEMAND** |
| v. | : : | |
| HANOVER AMERICAN INSURANCE COMPANY and HANOVER INSURANCE COMPANY; and KIND, LLC, | : : : : | |
| Defendants. | : | |

Intervenor-Plaintiff, Bridgetown Natural Foods LLC ("BNF"), by and though its undersigned counsel, files this Complaint against defendants Hanover American Insurance Company ("Hanover American") and Hanover Insurance Company ("Hanover Insurance") (collectively "Hanover") , and defendant KIND, LLC ("KIND"), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1. In this declaratory judgment action, plaintiffs Hanover American and Hanover Insurance seek a declaration that they have no duty to continue defending or to indemnify defendant KIND with respect to certain claims that have been asserted against KIND in an

1

underlying lawsuit involving the tragic death of a minor – styled *Erin Flanagan, PR of the Estate of T.L.P.[1] v. KIND, LLC*, Case No. 8:20-CV-0273, United States District Court for the District of Nebraska ("Underlying Action") – that recently settled. Although Hanover initially agreed to recognize KIND as an additional insured under two insurance policies Hanover issued to intervenor BNF and to defend KIND in the Underlying Action, Hanover now seeks a judicial declaration relieving it of all its obligations to its additional insured under the policies.

2. In filing this lawsuit, Hanover has unreasonably and recklessly exposed its named insured, BNF, to substantial and unwarranted claims for contractual indemnification by KIND relating to both the settlement of the Underlying Action and the defense of this action and, in doing so, has acted in bad faith.

3. It is uncontested that the claims asserted against KIND in the Underlying Action fall within the scope of coverage afforded under the Hanover insurance policies obtained and paid for by BNF, and BNF is not responsible for indemnifying KIND for any portion of any judgment or settlement within the combined $15 million limits of the two policies.

4. As a result of Hanover's actions, BNF has no alternative but to intervene as a plaintiff in this lawsuit in order to protect its significant legal interests in this matter which cannot be adequately represented or protected by the current parties and which will be irreparably harmed if BNF is not permitted to intervene.

## THE PARTIES

5. Bridgetown Natural Foods LLC is a Delaware limited liability company with its principal place of business in the State of Oregon.

---

[1] Because this matter involves the death of a minor and in order to protect her personal information, the decedent is referred to only by the initials TLP.

6. Hanover American Insurance Company is a New Hampshire company with its principal places of business in the State of Massachusetts.

7. Hanover Insurance Company is a New Hampshire company with its principal places of business in the State of Massachusetts.

8. KIND, LLC is a New York limited liability company with its principal place of business in the State of New York.

## JURISDICTION & VENUE

9. This Court has subject-matter jurisdiction to hear this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

10 Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim for declaratory relief and related bad faith claim occurred in this district.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to preside over and adjudicate all other claims alleged by BNF in addition to its claims for declaratory relief.

## RELEVANT FACTUAL BACKGROUND

**A.** *The Manufacturing Agreement*

12. Pursuant to a "First Amended and Restated Manufacturing Agreement" entered into as of June 1, 2016 ("the Agreement") between BNF and KIND Operations, Inc. ("KIND Operations"), BNF manufactured certain food products for sale by KIND including a nutrition bar sold under the name "KIND Dark Chocolate Almond & Sea Salt bar." ("KIND Bar").

13. The Agreement contains various provisions, including (a) an Indemnification provision requiring BNF to defend and indemnify KIND Operations and its affiliates and

subsidiaries, ostensibly including KIND, for certain liabilities arising out of BNF's performance of its obligations under the Agreement, and (b) an Insurance provision requiring BNF to procure and maintain certain minimum insurance coverages and to include those same KIND affiliates and subsidiaries as additional insureds under BNF's insurance policies.

14. In particular, the Agreement's Indemnification provision states:

> 9. Indemnification. [BNF] shall defend, indemnify and hold [KIND], its parent, Affiliates, and subsidiaries and their respective officers, directors, members, managers, employees, agents, successors and assigns harmless from and against any and all claims, suits, liabilities, judgments, losses, damages, costs or expense (including reasonable attorneys' fees and costs, whether incurred for [KIND]'s primary defense or for [KIND]'s enforcement of its indemnification rights hereunder)…arising out of, or in any way related to: (i) the preparation, manufacturing, processing, packaging, storing, handling, or like treatment of Products, packaging or raw materials by [BNF], (ii) any negligent act, misfeasance or nonfeasance by [BNF] or any of its agents, contractors, servants or employees, (iii) any breach of this Agreement by [BNF] or the Principals, or (iv) [BNF]'s failure to comply with any of the QA Requirements or Applicable Laws. This indemnity will be in addition to any other rights and remedies to which [KIND] may be entitled to by law or equity. The obligations of indemnification set forth in this Agreement shall survive its termination or expiration. This indemnity will be in addition to any other rights and remedies to which [KIND] may be entitled to by law or equity. The obligations or indemnification set forth in this Agreement shall survive its termination or expiration.

15. The Agreement's Insurance provision, in turn, states, in relevant part, as follows:

> [BNF] shall obtain, continuously maintain, and pay all premium costs and deductibles, if any, for the following insurance coverages in amounts not less than specified below throughout the duration of the Term, each of which shall be subject the review and approval of [KIND]:
>
>> (a) An occurrence based Commercial General Liability Insurance Policy with a products liability endorsement with minimum limits of not less than $15,000,000 per occurrence and $15,000,000 aggregate (including coverage under an umbrella policy)…

4

* * *

[KIND] and its Affiliates must be included as additional insureds (the "Additional Insured") under the policies. Coverage for the Additional Insured shall apply on a primary basis irrespective of any other insurance, whether collectible or not. All policies shall be endorsed to provide a waiver of subrogation in favor of the Additional Insured. All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, [KIND] shall receive notice in accordance with such policy provisions and [BNF] shall furnish [KIND] with certificates of insurance evidencing compliance with all insurance provisions upon execution of this Agreement and annually thereafter at least ten (10) days prior to the expiration of each required insurance policy.

**B.** *The Hanover Insurance Policies*

16. Consistent with its insurance obligations under the Agreement, BNF obtained two insurance policies from Hanover: (1) a Commercial Lines Policy issued by Hanover American bearing policy number ZZ4-A713252-03 for the policy period from August 25, 2018 to August 25, 2019 with an "Each Occurrence" limit of $1 Million and a "General Aggregate Limit" of $2 Million ("the Hanover Primary Policy"); and (2) a Commercial Follow Form Excess and Umbrella Policy issued by Hanover Insurance bearing policy number UH4-A713256-0303 for the policy period from August 25, 2018 to August 25, 2019 with an "Each Occurrence/Each Claim" limit of $14 Million ("the Hanover Excess Policy"). (*See* Dkt. 1, Exs. A and B).

17. The insuring agreement applicable to the Hanover Primary Policy, to which the Hanover Excess Policy follows form, provides, in pertinent part, as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **INSURING AGREEMENT**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

   * * *

18. The Hanover Primary Policy contains an exclusion for certain contractually assumed liabilities which, in turn, is subject to an "insured contract" exception as follows:

2. **EXCLUSIONS**

   This insurance does not apply to:

   * * *

   a. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   * * *

   (2) Assumed in a contract or agreement that is an "insured contract"," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

19. The Hanover Primary Policy also recognizes certain entities as additional insureds under the policy where, as here, the named insured, BNF, is required in a written contract to include them as such, and provides as follows:

> **SECTION II – WHO IS AN INSURED**
>
> **1. Additional Insured by Contract, Agreement or Permit**
>
> The following is added to SECTION II – WHO IS AN INSURED:
>
> **Additional Insured by Contract, Agreement or Permit**
>
> a. Any person or organization with whom you agreed in a written contract, written agreement or permit that such person or organization to add an additional insured on your policy is an additional insured only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf, but only with respect to:
>
> > (1) "Your work" for the additional insured(s) designated in the contract, agreement, or permit;
>
> * * *

20. Section V of the Hanover Policy also contains various definitions, including the following definition of "Insured Contract":

> **SECTION V – DEFINITIONS**
>
> * * *
>
> 9. "Insured Contract" means:
>
> * * *
>
> > f. That part of any other contract or agreement pertaining to your business…under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

7

* * *

21. The Hanover Excess Policy follows form to the terms, conditions, exclusions and limitations in the Hanover Primary Policy.

*C. The Underlying Action and Hanover's Defense of KIND as an Additional Insured*

22. On June 2, 2020, KIND was named a defendant in the Underlying Action which was initially filed in Nebraska state court (Sarpy County) and subsequently removed to U.S. District Court for the District of Nebraska, where it is currently docketed as Case No. 8:20-cv-0273.

23. The complaint alleges that eleven-year-old TLP suffered from a peanut allergy and died as a result of an anaphylactic shock reaction after consuming a KIND Bar on July 17, 2019, while in the care of her aunt and uncle, and asserts causes of action against KIND sounding in negligence and strict liability.

24. After suit in the Underlying Action was initiated, KIND determined that the KIND bar consumed by the minor decedent was manufactured by BNF pursuant to the Agreement, and, on or about September 4, 2020, KIND tendered the lawsuit to BNF seeking defense and indemnity.

25. Thereafter, BNF promptly forwarded KIND's tender seeking defense and indemnity coverage to Hanover.

26. On September 15, 2020, Hanover agreed to provide KIND with a defense in the Underlying Action as an additional insured under the Hanover Primary Policy subject to a reservation of rights, and appointed counsel to defend KIND in the Underlying Action.

27. Hanover similarly acknowledged the potential for indemnity coverage under the Hanover Excess Policy for the claims asserted against KIND in the Underlying Action.

28. As the defense of the Underlying Action progressed, the parties participated in settlement negotiations in effort to explore and assess whether an amicable resolution to a case involving the tragic death of a minor child was a feasible alternative to a litigated resolution and all of the accompanying uncertainties associated with a trial.

29. KIND was understandably motivated to fully explore the possibility of settling the Underlying Action without the need for a trial and to determine whether it was reasonably possible to do so.

30. Moreover, BNF likewise has an interest in a successful, negotiated resolution of the Underlying Action if reasonably possible to do so given its potential indemnification obligations under the Agreement for certain losses and/or claims arising out of BNF's performance of its obligations under the Agreement.

31. Although BNF was not named a defendant in the Underlying Action, at all relevant times, Hanover was aware of BNF's substantial interest in the outcome of the Underlying Action, including the preservation of its business relationship with a valued client and partner.

32. In early October 2022, the parties in the Underlying Action reached an agreement to settle the case for an amount that, while within the range of settlement values identified by defense counsel assigned by Hanover to represent KIND's interest, was significantly more than the amount that Hanover was willing to offer or contribute to settle the case.

33. On October 7, 2022, BNF corresponded with Hanover, reminding it of its obligation to act in the best interests of its insureds, including BNF; requesting that Hanover settle the Underlying Action and fully fund the settlement; and, requesting copies of all correspondence and case management updates prepared by defense counsel appointed by Hanover to represent KIND

in the Underlying Action containing counsel's valuation(s) of the reasonable settlement value of the case.

34. On November 4, 2022, counsel for BNF followed up with Hanover and requested a response concerning its earlier correspondence relating to the settlement in the Underlying Action as well as the other matters raised by BNF in its correspondence.

35. By letter dated November 10, 2022, Hanover responded to Bridgetown's October 7th letter (and a letter on behalf of KIND dated October 4, 2022) by doubling-down on its undervaluation of the settlement value of a wrongful death action involving the tragic death of an extremely sympathetic minor plaintiff and by accusing KIND of breaching various conditions in the Hanover policies.

36. In its November 10th letter, Hanover also refused to provide BNF with copies of the case evaluations prepared by KIND's defense counsel that BNF reasonably requested, and instead enclosed a copy of the Complaint for Declaratory Judgment and Jury Demand in this action that Hanover filed in the United States District Court for the District of Nebraska earlier that same day.

37. Significantly, no evidence was developed during the course of discovery in the Underlying Action identifying or supporting a manufacturing defect on the part of BNF in connection with its manufacturing of the KIND bar at issue under the terms of the Agreement as a possible cause or contributing cause of the minor's death.

### D. The Instant Declaratory Judgment Action

38. As discussed above, despite defending KIND against the claims asserted against it in the Underlying Action for more than two years, on November 10, 2022, Hanover abruptly filed this declaratory judgment action as the case was nearing a final settlement. (*See* Dkt. # 1).

39. In its complaint, Hanover is seeking a judicial declaration that it has no duty to continue its defense of KIND or any obligation whatsoever to indemnify KIND for any judgment that may be entered against it or to fund any settlement on KIND's behalf to in order to resolve the Underlying Action. (*Id*. at ¶¶ 28-42).

40. According to the complaint, Hanover alleges that KIND has breached certain conditions in the Hanover policies and, therefore, Hanover is entitled to a declaration relieving Hanover of all its contractual obligations under the policies. (*Id*. at ¶¶ 26, 37, 42).

## COUNT I
### (Declaratory Judgment – The Indemnification Provision in BNF's Agreement with KIND Constitutes an "Insured Contract")

41. BNF repeats and incorporates by reference paragraphs 1-40 of this Complaint as is fully set forth herein.

42. The Hanover Policies issued to BNF exclude coverage for certain contractually assumed liabilities by BNF in its contracts with third parties.

43. The "Contractual Liability" exclusion is subject to an "Insured Contract" exception, however, which is defined, in relevant part, as "[t]hat part of any other contract or agreement pertaining to your business…under which you assume tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

44. The claims asserted against KIND in the Underlying Action fall within the scope of coverage afforded under the Hanover Primary and Hanover Excess Policies, and Hanover has a duty to fully fund the entire settlement in the Underlying Action up to the combined $15 Million limits of the policies.

45. However, to the extent that Hanover fails to fully fund a settlement in the Underlying Action and to the extent that KIND pursues a claim for contractual indemnity against

BNF under the Agreement's Indemnification provision for the difference between the amounts paid by Hanover, if any, and the total amount of the settlement agreement, BNF is entitled to a declaration that the contractual indemnity obligation it assumed in the Agreement is a covered "Insured Contract" under the Hanover policies.

46. BNF has complied with all terms, conditions and prerequisites to coverage set forth in the Hanover Primary and Hanover Excess Policies.

47. By reason of the foregoing, an actual and justiciable controversy exists between BNF and Hanover, and BNF therefore seeks a declaration of its rights under the policies.

**WHEREFORE**, Bridgetown Natural Foods, LLC respectfully requests this Court to enter an order declaring that the contractual indemnity obligation assumed by Bridgetown Natural Foods, LLC in its Agreement with KIND Operations constitutes an "Insured Contract" under the Hanover Primary and Hanover Excess Policies, and Hanover must provide coverage to Bridgetown Natural Foods, LLC for the contractual indemnification claim asserted by KIND, LLC, together with such other costs, disbursements, fees, and other relief as this Court deems just and appropriate.

### COUNT II
### (Bad Faith v. Hanover )

48. BNF repeats and incorporates by reference paragraphs 1-47 of this Complaint as is fully set forth herein.

49. Under the applicable law, an insurer who unreasonably refuse to settle a claim against its insured by a third party is liable in bad faith.

50. The wrongful death claim asserted against KIND in the Underlying Action involving the tragic death of a minor as a result of an anaphylactic reaction to ingesting a nutrition bar manufactured by BNF falls within the scope of coverage afforded under the Hanover Primary and Excess Policies.

51. Based upon the information obtained by BNF, BNF understands and avers that Hanover had an opportunity to settle the claims asserted against its additional insured, KIND, for an amount well below the combined limits of the Hanover Primary and Excess Policies and within the range of settlement values identified by defense counsel assigned by Hanover to defend KIND.

52. Rather than settle the case for a reasonable amount when it had the opportunity to reasonably do so, Hanover instead filed the instant declaratory judgment action seeking a declaration that it has no defense or indemnity obligation to its additional insured, KIND.

53. In doing so, Hanover has exposed its named insured, BNF, to a substantial and wholly unnecessary claim for contractual indemnification for any portion of the settlement that Hanover refuses to fund and, as such, Hanover has acted in bad faith since it lacked a reasonable basis for refusing to settle the Underlying Action for an amount that was both acceptable to all parties in the Underlying Action and within the range of potential settlement values identified by defense counsel assigned by Hanover to defend KIND.

54. Still further, Hanover has acted in bad faith by recklessly and/or unreasonably failing to properly evaluate the fair and reasonable settlement value of the claims asserted against KIND in the Underlying Action; by failing to keep BNF appraised of developments in the Underlying Action including the prospects for a negotiated settlement; by failing to share with BNF the case assessments of the defense counsel it retained to defend KIND, including counsel's assessment of the range of reasonable settlement values for the case; and, by depriving BNF of its ability to adequately protect its substantial interests in the outcome of the Underlying Action.

55. Here, Hanover knew or recklessly disregarded its lack of a reasonable basis for refusing to settle and fund a settlement in the Underlying Action for an amount that fairly

represented the value of the case in light of all the relevant factors, including but not limited to the assessment of defense counsel Hanover assigned to represent KIND.

56. As a direct and proximate result of the acts and/or omissions of Hanover described above, BNF has suffered damages in an amount to be proven at trial.

**WHEREFORE**, Bridgetown Natural Foods, LLC respectfully requests this Court to enter judgment in its favor on its bad faith claim together with such other costs, disbursements, attorneys' fees, punitive damages, and other relief as this Court deems just and appropriate.

## COUNT III
**(Declaratory Judgment – BNF Has No Indemnity Obligation Under the Agreement)**

57. BNF repeats and incorporates by reference paragraphs 1- 56 of this Complaint as is fully set forth herein.

58. The Agreement contains an Indemnification provision requiring BNF to indemnify KIND for certain claims, losses or liabilities "arising out of, or in any way related to: (i) the preparation, manufacturing, processing, packaging, storing, handling, or like treatment of Products, packaging or raw materials by [BNF], (ii) any negligent act, misfeasance or nonfeasance by [BNF] or any of its agents, contractors, servants or employees, (iii) any breach of this Agreement by [BNF] or … (iv) [BNF]'s failure to comply with any of the QA Requirements or Applicable Laws."

59. KIND has asserted a claim against BNF for contractual indemnification under the Agreement for any amounts it is required to pay to fund a settlement in the Underlying Action in excess of the amounts, if any, that Hanover is prepared to contribute to a settlement.

60. In the Underlying Action, no evidence was developed establishing that the alleged claims or losses for which the underlying plaintiff was seeking to hold KIND liable were the result

of any of negligence, misfeasance, nonfeasance, breach, or failure to comply with any requirement/law on the part of BNF.

61. In the absence of any evidence that the claims or losses for which the underlying plaintiff was seeking to hold KIND liable were the result of BNF's negligence, misfeasance, nonfeasance, breach, or failure to comply with any requirement/law, BNF can have no indemnity obligation under the Agreement's Indemnification provision.

62. By reason of the foregoing, BNF is entitled to a declaration that it has no indemnity obligation under the Agreement's Indemnification provision.

**WHEREFORE**, Bridgetown Natural Foods, LLC respectfully requests this Court to enter an order declaring that Bridgetown Natural Foods, LLC has no indemnity obligation under the Agreement for the claims asserted against KIND, LLC in the Underlying Action, together with such other costs, disbursements, fees, and other relief as this Court deems just and appropriate.

### COUNT IV
**(Declaratory Judgment – BNF Has No Attorney Fee Obligation Under the Agreement)**

63. BNF repeats and incorporates by reference paragraphs 1- 62 of this Complaint as is fully set forth herein.

64. The Agreement contains an Indemnification provision requiring BNF to defend and indemnify KIND for certain costs and expenses, "including reasonable attorneys' fees and costs, whether incurred for [KIND]'s primary defense or for [KIND]'s enforcement of its indemnification rights hereunder)…"

65. KIND has asserted a claim against BNF for attorneys' fees that KIND has incurred or will incur in its defense of the claims asserted against KIND by Hanover in this declaratory judgment action.

66. Attorneys' fees incurred in the defense of a coverage/declaratory judgment action initiated by an insurer (Hanover) against its additional insured (KIND) are outside the scope of the Agreement's Indemnification provision.

67. By reason of the foregoing, BNF is entitled to a declaration that it has no obligation under the Agreement's Indemnification provision to indemnity KIND for attorneys' fees it incurs in its defense of the claims alleged by Hanover in this declaratory judgment action obligation.

**WHEREFORE**, Bridgetown Natural Foods, LLC respectfully requests this Court to enter an order declaring that Bridgetown Natural Foods, LLC has no obligation under the Agreement to indemnify KIND, LLC for attorneys' fees incurred by KIND, LLC in this action, together with such other costs, disbursements, fees, and other relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

68. A jury trial is demanded on all claims so triable.

Dated: May 16, 2023

Respectfully submitted,

**JACOBSEN ORR LINDSTROM & HOLBROOK PC LLO**

By: *s/ Daniel L. Lindstrom*
Daniel L. Lindstrom
322 W 39th St / PO Box 1060
Kearney, NE 68848-1060
Tel: (308) 234-5579
Fax: (308) 234-9305
dlindstrom@jacobsenorr.com

**STEWART SMITH**
Joseph F. Bermudez, Esq.
*(Pro Hac Vice)*
Michael Murphy, Esq.
*(Pro Hac Vice)*
Catherine Begley, Esq.
*(Pro Hac Vice)*
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
Tel: (484) 344-5296
Fax: (484) 534-9470
jbermudez@stewartsmithlaw.com
mmurphy@stewartsmithlaw.com
cbegley@stewartsmithlaw.com

*Attorneys for Intervenor-Plaintiff
Bridgetown Natural Foods, LLC*